GEORGE W. CALDWELL *vs.* ALBION P. BLAKE.

Oxford. Opinion May 26, 1879.

*Execution sale. Plantation. Return of execution. Deed,—form of. Record. Spec. Stat. Judgment,—collateral impeachment. Constitutionality. .Amendment of execution.*

The real estate in a plantation, which has been seized on an execution against the plantation before the date when, by legislative enactment, its existence for the purposes of suing and being sued ceases, may be sold, in regular course of proceeding after that date; and the sale will be valid, like that of the property of a deceased person which has been seized on execution prior to his death.

However lots may be seized under R. S., c. 84, § 29, the officer must advertise the names of such proprietors as are known to him, in his notices of sale; but where he seizes and sells the lots as lotted out on the plan of the plantation, the omission to name a proprietor not known to him, will not prevent the interest of that proprietor from passing to the purchaser with the rest.

The failure of the officer to return the execution to the clerk's office, for more than a year after the sale, will not affect the purchaser's title, if the proceedings have been regular in seizing, advertising and selling the lands.

Nor will the failure of the purchaser to place his deed on record, for more than nine months after the sale, provided there has been no intermediate conveyance.

The "cause of the sale" is sufficiently expressed in the deed to the purchaser to answer the requirements of R. S., c. 84, § 30, when it can be ascertained from it and the papers referred to therein who were the parties to the execution, its amount, and the court and term at which the judgment on which it was issued was rendered, so that the deed will establish the right of the party whose land is sold to redeem within one year, if he sees fit, or point out to him the records and witnesses necessary to prove his claim against the town under § 31.

Spec. Stat. of 1874, c. 608,* was merely permissive; and did not take away the right of creditors of Hamlin's Grant Plantation to collect their debts by the ordinary process, so long as the plantation continued to exist for that purpose.

The title of a purchaser at a sale on the execution cannot be questioned collaterally, while the judgment and proceedings remain in force.

When the officer advertises and sells the lots as lotted on the plan of the plantation, and the whole of a lot is necessary to satisfy the execution and expenses of sale, and the proceedings are regular, his deed will pass the title of all the owners in the lot, known or unknown; and the fact that he gives, in his advertisement, the names of two persons as proprietors in the lot, one of whom has mortgaged his interest, and does not say whether the two own in common, or, if in severalty, does not describe their parcels, will not vitiate the sale.

The execution was defective in running against real estate of the inhabitants, instead of against the "real estate situated in" the plantation; and, unless amended, the defendant's title will fail.

The court may allow an amendment of a mistake committed by its recording officer, when such amendment will be in furtherance of justice, and when the party to be affected thereby will not be subjected to any loss or inconvenience other than what he would have been subjected to had the execution been originally in proper form.

The statute authorizing these proceedings is not unconstitutional.

Nor can the rights of the defendant, acquired by a purchase at a judicial sale made in pursuance of it, be destroyed because the remedy provided for the plaintiff cannot be made available against a plantation which has ceased to exist.

ON REPORT.

TRESPASS *quare clausum fregit* upon certain land in that part of the town of Woodstock, in the county of Oxford, which was formerly lot numbered four in Hamlin's Grant Plantation. Trespass alleged July, 1876. Writ dated August 22, 1876.

Plea, general issue and title in the defendant.

To sustain his action the plaintiff introduced a mortgage deed of the premises, from one John B. Merrill to himself, dated and

---

* See opinion.

recorded January 18, 1875, to secure the sum of $1,000 payable in two years, with interest annually at ten per cent; a notice of foreclosure for breach of condition, published in the Oxford Register, a newspaper published in the county of Oxford, dated April 4, 1876, and recorded May 1, 1876; together with the testimony of the mortgagor that the mortgage debt was unpaid, and that, after the publication of the notice, he surrendered possession of the premises to the plaintiff, under an agreement that the plaintiff should receive and apply the income of the premises towards the payment of the mortgage debt; and that the defendant, although forbidden by the plaintiff's agent, cut and carried away the hay on the premises at the time alleged in the writ, which is the trespass complained of.

The defendant claimed title to the premises in himself by virtue of a sheriff's deed to him as the highest bidder, at a sale made June 19, 1875, under the provisions of R. S., c. 84, §§ 29, 30, on an execution in favor of *Eaton Shaw* v. *Inhabitants of Hamlin's Grant Plantation.*

To sustain this claim the defendant introduced a copy of the writ, dated July 21, 1874, containing a count for an account annexed, for the sale of various quantities of intoxicating liquors, all prior to January 9, 1873; of proceedings and record of judgment recovered in favor of Shaw, as state commissioner, at the December term, 1874, of the superior court in and for the county of Cumberland, for the sum of $614.90 debt or damage, and costs taxed at $23.92; of the execution which issued on said judgment December 17, 1874. The execution was in due form, with the exception following : Instead of directing the execution against the goods and chattels of the inhabitants of the plantation, and against the "real estate situated therein," it was directed "against goods, chattels or lands of the said debtors."

The defendant also introduced a copy of the officer's return on the execution, dated July 3, 1876, so much of which as is material to the decision of this case is as follows :

"By virtue of this execution I certify that I have made diligent search for goods and chattels belonging to the inhabitants of the within named Hamlin's Grant Plantation, and for want thereof

wherewith to satisfy this execution by sale as provided by law, therefore I, on the eleventh day of February, A. D. 1875, took and seized the following described real estate, to wit: Thirteen lots of land situated in said Hamlin's Grant Plantation, as they are lotted out on the original plan of said plantation, and numbered one to thirteen inclusive, and owned, as far as known to me, to wit: . . lot numbered four, owned by John B. Merrill and Mrs. Almeda Newton, . . and advertised the same for sale by public auction, in the Oxford Register, a newspaper printed in Paris, within the county of Oxford, and the Kennebec Journal, a newspaper printed in Augusta, county of Kennebec, said Kennebec Journal being the state paper, both of said publications being three weeks in succession and the last of said publications being more than three months previous to the time appointed for said sale. And, on the nineteenth day of June, A. D. 1875, at ten o'clock in the forenoon, at the office of R. A. Frye, in Bethel, in said county of Oxford, being the time and place advertised for said sale, I sold lot numbered . . four to Albion P. Blake for the sum of two hundred and ten dollars, he being the highest bidder therefor. . . All the above named sales were made by public auction and in accordance with the aforementioned advertisement. And I have made, executed and delivered deeds to the several parties in accordance with the several sales aforementioned, and have applied the several aforementioned sums, amounting in all to the sum of $701, in full satisfaction of this execution," etc. (Signed) G. L. Blake, deputy sheriff.

The defendant also introduced copy of the notice published, dated February 11, 1875, which was in due form, which closed as follows: " And, unless previously redeemed, so much of said real estate as is necessary to satisfy said execution and expenses thereon will be sold at public auction, at the office of R. A. Frye, in Bethel, in said county of Oxford, on Saturday, the nineteenth day of June, A. D. 1875, at ten o'clock in the forenoon." (Signed) G. L. Blake, deputy sheriff.

The defendant also introduced the sheriff's deed to himself, dated June 19, 1875, acknowledged July 3, 1875, and recorded March 20, 1876. The deed was as follows:

"Know all men by these presents, that I, Gilman L. Blake, of Bethel, in the county of Oxford and state of Maine, a deputy sheriff under Josiah W. Whitten, sheriff for the same county, having in my hands an execution in favor of Eaton Shaw, of Portland, in the county of Cumberland, against the inhabitants of Hamlin's Grant Plantation, in said county, and for want of goods and chattels, after having made diligent search for the same in said plantation, wherewith to satisfy said execution, I levied said execution upon the following described real estate situated in said plantation, and, having advertised the time and place of sale in the Kennebec Journal, the state paper, and in the Oxford Register, one of the newspapers printed in the county of Oxford where said land lies, with the names of the proprietors, so far as they were known to me, of the lands I proposed to sell, with the amount of said execution, three weeks successively, the last publication more than three months before the time appointed for the sale, did, on the nineteenth day of June, A. D. 1875, by virtue of said execution, and in pursuance of said notice, sell at public auction to Albion P. Blake, of Bethel aforesaid, the real estate situated in said Hamlin's Grant Plantation hereafter described, the same being struck off to him for the sum of $210, he being the highest bidder therefor, viz : Lot numbered four in Hamlin's Grant Plantation, owned or occupied by John B. Merrill and Almeda Newton. Therefore I, Gilman L. Blake, deputy sheriff as aforesaid, by virtue of said execution, and in consideration of the aforesaid sum of two hundred and ten dollars to me paid by said Albion P. Blake, the receipt whereof I do hereby acknowledge, have given, granted and sold, and by these presents do give, grant, sell and convey to the said Blake, his heirs and assigns forever, the above described premises, with all the privileges and appurtenances to the same belonging ; and I do covenant with the said Blake that I have in all things observed the rules and directions of the law in advertising and selling said real estate, and have good right and lawful authority to sell and convey the same in manner as aforesaid, to have and to hold the same in manner as aforesaid, to him, the said Blake, his heirs and assigns forever ; provided the said John B. Merrill and Almeda Newton,

or the proprietors of said land sold as aforesaid, may redeem the same within one year after the said sale as aforesaid by paying the sum for which it was sold, the necessary charges and interest thereon. In witness whereof," etc.

The defendant also proved, subject to seasonable objection, that, a few days before he commenced to cut the hay mentioned in the plaintiff's writ, and more than one year after the sale of the premises to him by said deputy sheriff Blake, he went upon said premises, openly and peaceably, in the presence of witnesses, and took possession of the same, and still retains possession thereof, the same not having been redeemed by any person.

The case was withdrawn from the jury and continued on report, with the stipulation that, if the action cannot be maintained, the plaintiff should be nonsuit.

Spec. Stats. 1873, c. 269, and 1874, c. 608, sufficiently appear in the opinion.

*D. & E. Hammons*, for the plaintiff, contended, *inter alia* :

I. That the plaintiff being a resident of Boston, Mass., and the execution running against the real estate of the inhabitants of Hamlin's Grant Plantation only, it did not authorize the seizure and sale of the plaintiff's land in controversy. R. S., c. 84, § 29. The acts of the officer were without authority, and hence void.

II. At the date of the alleged sale Hamlin's Grant Plantation had no existence, it had ceased to exist more than three months prior thereto. Spec. Stat. of 1873, c. 269.

III. The plantation having ceased to exist, the plaintiff, if this sale be upheld, cannot have the remedy provided in R. S., c. 84, § 31, or any other redress. This is in violation of the constitution.

IV. The Spec. Stat. of 1873, c. 269, required of the assessors an impossibility; therefore they did nothing—made no settlement, paid no debts, assessed no tax and collected no dues. Spec. Stat. of 1874, c. 608, was intended to relieve the plantation. Yet Shaw neglected to commence his action until July 21, 1874, neglected to take judgment until December term, 1874, and to make seizure on his execution until February 11, two days before the

plantation ceased to exist for any and all purposes. Shaw should have availed himself of the provisions of c. 608, and could not properly resort to any other. The passage of this act took away all other remedies. *Russell* v. *Smith*, 42 Maine, 414. *Andrews* v. *Marshall*, 43 Maine, 278. *Williams* v. *Amory*, 14 Mass. 20. *Whitten* v. *Varney*, 10 N. H. 296. *Russell* v. *Dyer*, 40 N. H. 173.

V. His notice was defective. R. S., c. 84, § 30. He gave the names of the proprietors in part and the number of lot, and omitted the name of Caldwell, although the registry of deeds disclosed it. He could sell only the interest advertised. The plaintiff's interest not being advertised, he had no notice.

The sale took place June 19, 1875, and the officer's return of execution was July 3, 1876, more than a year after the sale. The deed bears date June 19, 1875, its registration March 10, 1876, nine months after the sale. In the absence of any statutory requirement, the return of execution and registration of deed should have been made within a reasonable time.

VI. The deed should recite all the facts necessary to authorize and perfect the sale. " It should express therein the cause of sale." R. S., c. 84, § 30. This deed does not comply with this provision. Date of execution, nor court, nor amount of execution, nor date of advertisement or place of sale is given.

It does not state that the officer could not find goods and chattels within his precinct, but none in the plantation. He could not take real estate if he could find personal.

It does not state the mode of seizure.

VII. The seizure is made when notice of the sale is given. R. S., c. 76, § 35. The publication could not have been made legally after dissolution of plantation, February 13. He does not state date of either publication. It should affirmatively appear to have been made prior to February 13 ; that the first notice at least was published before that day.

VIII. The interest of each owner should have been sold separately, that each might redeem, as in case of equities. *Smith* v. *Dow*, 51 Maine, 21.

IX. It does not appear in what manner Merrill and Newton

owned lot No. 4, whether in common or in severalty. How could they redeem? *Stone* v. *Bartlett*, 46 Maine, 439. *Fletcher* v. *Stone*, 3 Pick. 250.

*R. A. Frye*, for the defendant.

BARROWS, J. To support this action of trespass upon lands situated in that part of Woodstock which was formerly Hamlin's Grant Plantation, the plaintiff introduced a mortgage deed of the premises from one John B. Merrill to himself, dated January 18, 1875, and recorded same day, to secure the sum of one thousand dollars, payable in two years, with interest annually at ten per cent; a notice of foreclosure for breach of condition, recorded May 1, 1876, and the testimony of said Merrill that the mortgage debt was unpaid; that he gave possession of the premises, after the publication of the notice of foreclosure, to the plaintiff, under an agreement that he should apply the income from them to the payment of the mortgage debt, and that defendant, though forbidden by plaintiff's agent, cut the grass on the premises in 1876, which is the trespass complained of.

Defendant claims title to the premises in himself by virtue of a sheriff's deed to him as the highest bidder at a sale made June 19, 1875, on an execution in favor of Eaton Shaw against the inhabitants of Hamlin's Grant Plantation.

To maintain his title he produces copies of the writ and proceedings, and record of the judgment in said suit, and the execution and officer's return thereon, from which it appears that Shaw's claim against the plantation accrued prior to January 9, 1873; that the suit was brought July 21, 1874, and upon regular proceedings had resulted in a judgment in Shaw's favor for debt and costs, at the December term of the superior court in Cumberland county, and that execution was issued December 17, 1874. In his return the officer certifies that he made diligent search for goods and chattels belonging to the inhabitants of Hamlin's Grant Plantation, the execution debtors, and for want thereof, on February 11, 1875, "seized the following described real estate, to wit: thirteen lots of land situated in said Hamlin's Grant Plantation, as they are lotted out on the original plan of said plantation,

and numbered one to thirteen, inclusive, and owned, as far as known to me, to wit: . . lot numbered four owned by John B. Merrill and Mrs Almeda Newton. . ."

He further returns that he advertised these lots for sale, (and herein his doings seem to be conformable to the requirements of the statute) and, at the appointed time and place, " sold . . lot numbered four to Albion P. Blake for the sum of two hundred and ten dollars, he being the highest bidder therefor, . ." and then follows the further return that he gave deeds of the several lots sold to the various purchasers, and applied the proceeds in satisfaction of the execution and all fees. This return is dated at the bottom July 3, 1876, and the officer appends a copy of the published notice of sale dated February 11, 1875. The sale took place on the nineteenth of June, 1875, and the defendant's deed from the officer bears date on that day, was acknowledged July 3, 1875, and recorded March 20, 1876. The defendant proved, subject to plaintiff's objections, that, subsequent to June 19, 1876, a few days before the cutting of the hay here complained of, he went, in the presence of witnesses, and openly and peaceably, under his deed from the sheriff, took possession of the premises, the same not having been redeemed by any one, though more than a year had then elapsed since the sheriff's sale ; and that he still holds the possession of the same.

By chapter 269, private and special laws, approved February 13, 1873, the legislature annexed the territory known as Hamlin's Grant to the town of Woodstock, and provided that " the corporate powers and organization of said plantation shall cease on the passage of this act, except that they shall continue for the period of two years for the sole purpose of collecting its dues and paying its debts, of suing and being sued.

By § 2 it was enacted that Woodstock should not be liable for any portion of the debt of the plantation, nor the property or inhabitants of the plantation for any part of the existing debt of the town. By § 3 the assessors of the plantation were required to settle with all persons having unsettled dealings with the plantation, and assess a tax sufficient to pay its indebtedness, and the collector and treasurer were to continue in office until March

4, 1875, if necessary, to collect the tax and pay the debts. These duties do not appear to have been performed; and by c. 608, private and special laws of 1874, the assessors of Woodstock elected that year were "authorized to audit all claims against Hamlin's Grant Plantation, . . and to assess a tax upon all the polls and estates as they existed in said plantation February 13, 1873, . . sufficient to pay all said indebtedness," etc.

The plaintiff urges several objections against the defendant's title: 1. Because the execution was issued in the common form against the goods, chattels or lands of the inhabitants of Hamlin's Grant Plantation only, and so did not authorize the officer to seize and sell property mortgaged to the plaintiff, who was a non-resident.

R. S., c. 84, § 29, provides that executions against towns shall be issued against the goods and chattels of the inhabitants thereof, and against the real estate situated therein, whether owned by such town or not. The last clause in the original act, approved February 27, 1833, reads, "whether owned by inhabitants or other persons." The effect is the same, however, and makes all the real estate situated in a town or plantation (without regard to its ownership) liable on an execution for its debts, in the absence of goods or chattels of the inhabitants, not exempt.

But the execution here did not conform to the requirement of the statute, and did not run against the real estate of the non-residents situated in the plantation as it should have done. That the title of the creditor levying such an execution upon property of non-residents will not be good without an amendment was settled in *Hayford* v. *Everett*, 68 Maine, 505, where the subject of such amendments is fully discussed, and where it appears to be well settled, both on principle and authority, that while the defect in the execution, unless amended, avoids the title of the purchaser, because the officer could not lawfully sell property against which his precept did not run, yet the court will amend the mistake of its clerk in all proper cases, where the amendment would be in furtherance of justice between the parties, even where no motion to amend has been made. *Lewis* v. *Ross*, 37 Maine, 230. *Hall* v. *Williams*, 10 Maine, 278. *Rollins* v. *Rich*, 27 Maine, 557.

*Morrill* v. *Cook*, 31 Maine, 120. *Thompson* v. *Smiley*, 50 Maine, 71, and numerous other cases in this and other states. If it turns out upon examination of the other objections urged by the plaintiff that the levy was rightly made, and the defendant's title is in all other respects good, we ought not to let this mistake in a judicial writ affect the rights of the parties, and must authorize the proper officer to correct it.

Applying the reasoning of the court in *Hall* v. *Williams*, 10 Maine, 286, to this case, we say it is not perceived that the plaintiff can suffer injury by this amendment, or any inconvenience other than what he would have been subjected to if the execution had been originally in proper form. The real estate of non-residents was by law subject to be seized on execution for the debts of the plantation for want of goods and chattels of the inhabitants which might be taken, and the plaintiff's property should stand just as it would if the recording officer of the court had not committed an error, which as to him was certainly harmless. See *Sawyer* v. *Baker*, 3 Maine, 29. Freem. Ex., §§ 63, 67, 72.

The plaintiff's next objection is that, at the time of the sale, the legal existence of the plantation had ceased, and he is therefore deprived of the remedy which he might otherwise have under R. S., c. 84, § 31, against the plantation to procure a reimbursement. But the lien upon the property, created by its seizure by the officer on the execution, is not affected by the subsequent demise of the debtor. *Parks* v. *Morse*, Cro. Eliz. 181. *Waghorne* v. *Langmeade*, 1 Bos. & P. 571. *Becker* v. *Becker*, 47 Barb. 497. *Dodge* v. *Mack*, 22 Ill. 93. *Den* v. *Hillman*, 2 Halst. 180. *Black* v. *Planters' Bank*, 4 Humph. 367.

If the appropriation of the plaintiff's property to the partial payment of a debt of the plantation where it was situated, for which it was by law made liable, is to be regarded as taking it for public uses, still the law under which it was done cannot be deemed unconstitutional, for due provision was made, by § 31, c. 84, for his reimbursement, and it is not perceived how the rights acquired by the defendant by a purchase at a judicial sale made in pursuance of it can be destroyed because the remedy provided for the plaintiff cannot be made available against a plantation

which has ceased to exist. The same result would have been likely to follow if the levy and sale under which defendant claims had been made any time during the last year of the legal existence of the plantation. The question as to the constitutional right of the legislature to dissolve one of these municipal corporations, leaving its liabilities unprovided for, does not properly arise here. If the act was invalid the plaintiff still has his remedy. Valid or invalid, it is not one upon which the defendant bases any claim.

The plaintiff further objects that only Merrill and Newton are named in the notice as proprietors of the lot, and therefore the plaintiff's estate under Merrill's mortgage was not taken. Not so ; it was lot numbered four, " as lotted out on the original plan of the plantation," which was advertised for sale, and this is one of the modes in which § 29, c. 84, authorizes the seizure and sale of the land in a town on an execution against it. Under § 30 the officer is to advertise " the names of such proprietors as are known to him of the lands which he proposes to sell," but the validity of the sale, it is evident, is not to depend upon the extent or accuracy of his knowledge of the proprietors, when he seizes, advertises and sells the lots " as lotted on the town plan." The " names of such proprietors as are known to him " are to be given by way of further identification of the lot, and, perhaps, to call their attention to the notice ; but where he does not undertake to sell the lots " as they are owned or occupied," the number of the lot upon the plan of the town or plantation and the names of such proprietors as are known to him will suffice to meet the requirements of the statute.

The plaintiff further argues that he had no notice of the sale and no opportunity to redeem, because the officer's return on the execution is dated July 3, 1876, and it does not appear that it was returned to the clerk's office until that time ; and the purchaser did not record his deed until March 20, 1876, leaving only three months of the year, within which the owner of the lot was entitled to redeem, unexpired.

But the only notice of sale which the statute requires is that which is given by advertising the time and place of sale three

months beforehand in the state paper and in one of the news-papers printed in the county where the land lies, if any, and if this is not effectual, there is little probability that the return of the execution to the clerk's office, or the record of the officer's deed in the registry of deeds, would be. At all events, the statute does not make them essential to the validity of the purchaser's title. No question arises as to the effect of any conveyance by Merrill or the plaintiff after the sale on execution and before the purchaser's deed was placed on record. Looking at the good understanding between the plaintiff and his mortgagor, John B. Merrill, as shown by the ready surrender of possession for breach of condition, by non-payment of first year's interest, it is difficult to believe that the plaintiff did not have actual as well as con-structive notice of the sale in season to redeem if he had desired to do so. He does not testify that he had not. But, if he had so testified, the court would not be at liberty to add another requisite to the validity of the purchaser's title beyond those speci-fied in the statute. Where an extent is made upon lands, the return of the officer must be seasonably made and recorded. Not so where property is sold upon execution. The statute does not require it, and the decisions are that " the purchaser's title is not dependent on the performance of this duty by the officer. The purchaser has no control over the officer, and is not prejudiced by a deficient or incorrect return, nor by the entire absence of any return whatever." Freem. Ex., § 341, and numerous cases cited in note. *Wheaton* v. *Sexton*, 4 Wheat. 503. *Gibson* v. *Winslow*, 38 Penn. 49.

Again, the plaintiff objects that the officer does not express the cause of sale in the deed given to the purchaser, as required by § 30, c. 84. The requirement is somewhat indefinite. The object is, probably, to enable the party whose land is sold to establish his right to redeem by the same instrument that takes away his title, and, perhaps, to direct him to the witnesses and records necessary to prove his claim against the town under section 31. We think this is sufficiently done by the recitals in the deed to the defend-ant. The cause of the sale was the execution claim of Eaton Shaw against the inhabitants of Hamlin's Grant Plantation, and

the officer sets out at some length his course of proceeding, pointing out the newspapers in which his notices of the sale, containing a statement of the amount of the execution and the court and term at which it was recovered, were published. We think the requirements of the statute and its objects are answered.

But the plaintiff insists that the officer's return does not show that the notice of sale was published prior to February 13, 1875, and that such publication must be regarded as the date of the seizure. We do not think it is competent for him in this action to dispute the truth of the officer's return, which is that he seized the real estate on the eleventh of February; and that is the date of his notice.

The plaintiff claims that the act of 1874, (c. 608, P. & S. L.) authorizing the assessors of Woodstock to audit claims against Hamlin's Grant Plantation, and to assess a tax on the polls and estates there, as they existed in 1873, sufficient to pay its indebtedness, deprived Shaw of the power to pursue his claim by the ordinary process of law. There is no indication in the act of any intention on the part of the legislature to limit creditors of the plantation to this mode of enforcing their demands. In any view of it, when Shaw had been permitted to proceed to judgment and execution, without the interposition of any such suggestion, the title of a purchaser at a sale on the execution cannot be questioned collaterally for that reason.

Finally, the plaintiff claims that the giving of the names of John B. Merrill and Mrs. Almeda Newton as owners of lot four in the notice of sale, without stating whether they owned in common or what portions each owned in severalty, is fatal to defendant's title. The objection would be formidable if the officer had undertaken to seize and sell the real estate in the plantation " by lots as they are owned or occupied," or if only a part of lot four had been required to satisfy the execution.

But, as we have before seen, he adopted the other mode permitted by the statutes. It was lot four on the plan of the plantation that was advertised, and so long as the officer gave the names of such owners as were known to him, errors or omissions in the names would not affect the sale. It was lot four that was sold,

not the interest of Merrill and Newton in the lot only, but that of all other unknown owners as well ; and, under such circumstances, if the owners or any of them desired to redeem, it would be necessary for them, where the law, as here, authorized a sale of the lot as an entirety, (if it was all needed to pay the execution) to adjust among themselves their shares of the redemption money. The case is not analogous to the sale of two equities of redemption in gross. Here the right in equity was created by the sale, and was a right to redeem lot four as it was sold.

We think the defendant's justification under his title may be regarded as established. For, " where an amendment is proper, it will, in collateral proceedings, be treated as if actually made." Freem. Ex., § 72, and cases there cited.

*Plaintiff nonsuit.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and LIBBEY, JJ., concurred.